IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 20, 2024
LAURA A. AUSTIN, CLERK
BY:
          s/A. Beeson
                    DEPUTY CLERK

JESSE RYAN DYE,                    )
                                   )
          Plaintiff,               )          Civil Action No. 7:23cv00036
                                   )
v.                                 )          **MEMORANDUM OPINION**
                                   )
RICK ALSBROOK, *et al.*,           )          By:   Hon. Thomas T. Cullen
                                   )                United States District Judge
          Defendants.              )

Plaintiff Jesse Ryan Dye, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against correctional staff at the Southwest Virginia Regional Jail Authority's ("SWVRJA") Tazewell and Haysi facilities ("Tazewell" and "Haysi," respectively).[1] This matter is before the court on the defendants' partial motion to dismiss.[2] Having reviewed the pleadings, the court will grant the defendants' motion.

## I.

On April 14, 2022, while he was housed at Tazewell as a pretrial detainee,[3] Dye alleges that an officer conducting "rounds" found a pill capsule floating in another inmate's toilet.

---

[1] In addition to his complaint, Dye filed a "Complaint Summary" on May 23, 2023. (*See* ECF No. 27.) In this summary, Dye gives additional facts in support of his claim and that give context to the otherwise sparse and conclusory allegations in his original complaint. The court construes Dye's "Complaint Summary" as a motion to supplement his complaint and grants the motion. The court also notes that defendants' motion to dismiss is based on the defendants' assumption that the court would treat the "Complaint Summary" as a motion to amend, grant the motion, and consider the additional facts laid out in the document. (*See* ECF No. 30, n.1.)

[2] The court construes Dye's complaint as supplemented by the "Complaint Summary" (ECF Nos. 1 & 27 together) to also allege equal-protection and access-to-courts claims, neither of which are addressed in the defendants' motion to dismiss. The court will give the defendants the opportunity to file a motion for summary judgment as to these remaining claims.

[3] Dye states that he was not convicted of crimes until February 2023.

(ECF No. 27 at 1.) Dye claims that when the officer asked the other inmate about the pill, the inmate reported that it had "back washed in the toilet." (*Id.*) Dye states that later that same day, both he and the other inmate were charged with disciplinary infractions related to the pill, even though he and the other inmate both denied that Dye had provided the pill. Approximately three to five days later, defendant Sgt. Kulcher advised Dye and the other inmate that their disciplinary hearings had been scheduled for April 21, 2022. Dye complains that Sgt. Kulchar failed to conduct the hearing on April 21, and instead held it on April 22, 2022, eight days after he had received the disciplinary charge. Dye argues that SWVRJA policy requires that disciplinary hearings be held within seven days of the charge being filed.

During the hearing, both Dye and the other inmate were present. Dye alleges that the other inmate "again stated the capsule back flushed in his toilet[,] that he never received the capsule from [Dye], and at no time was [Dye] anywhere near" the other inmate's cell or the other inmate near Dye's cell. (*Id.* at 2.) After hearing the evidence, Sgt. Kulcher found Dye guilty and the other inmate not guilty of the disciplinary infraction. Dye argues that by finding him guilty and not the other inmate, Sgt. Kulcher "showed discrimination and vindictive malicious behavior that was unprofessional." (*Id.*)

The next morning, on April 23, 2022, defendants Major Asbrook, Randy Mullins, and Sgt. Kulchar "had [Dye] transferred to" Haysi. (*Id.*) Dye argues that, by transferring him, they "refused" his right to appeal the disciplinary conviction. (Compl. at 2 [ECF No. 1].) Dye also argues that the transfer "caused unfair segregation"[4] from his family and attorneys, who were

---

[4] The court notes that Dye uses the word "segregation" to describe his separation from his family and attorney and not to describe his housing unit. In addition, Dye's complaint, as amended, does not describe any living conditions at Haysi that would suggest he was placed in segregated housing at the facility. Instead, in his

all in Tazewell County, approximately "2 hours away." (ECF No. 27 at 2−3.) Dye states that the separation from his attorney "caused [him] to have ineffective counsel in regards to [his] legal issues" because he "wasn't given the chance to properly defend himself in a court of law." (ECF No. 27 at 3.)

After Dye arrived at Haysi, he claims that he again tried to appeal the disciplinary conviction, but defendants Cpt. McCoy, Major Billinger, and Counselor Grizzle denied him that opportunity "because the offense occurred at Tazewell and not at Haysi." (Compl. at 2.) Dye states that he was subsequently "transferred back and forth for court at least a dozen time[s]." (ECF No. 27 at 3.) Dye argues that the defendants "discriminated" against him and refused his "right to appeal in a timely manner by immediately transferring [him] from facility to facility." (Compl. at 2.)

Dye also alleges that, while he was at Haysi, he was "offered a job" as a trustee, but defendants Cpt. McCoy, Major Billinger, and Counselor Grizzle would not allow him to take the job until six months after his disciplinary conviction at Tazewell.[5] (ECF No. 27 at 3.) Dye argues that Cpt. McCoy, Major Billinger, and Counselor Grizzle "showed vindictive [and] malic[ious] attitude[,] behavior[, and] treatment toward[] him." (ECF No. 27 at 4.) Dye also claims that Sgt. Kulcher made the other inmate (who was not found guilty of the disciplinary charge relating to the pill) a trustee at Tazewell after Dye left the facility, "proving discrimination." (*Id.*)

---

response to the defendants' motion to dismiss, Dye states that he was placed in "medium security" housing at Haysi. (ECF No. 33 at 7.)

[5] Dye notes that he was subsequently allowed to be a trustee beginning in March 2023, until he was transferred to a Virginia Department of Corrections facility in May 2023.

Dye argues that all of the defendants "showed vindictive [and] malic[ious] attitude[s,] behavior[, and] treatment towards [him] and discriminated by transferring [him], refusing [his] request for appeal, and causing [him] multiple transfers to [and] from facility to facility which was un[nec]essary and [a] cruel way of punishment." (ECF No. 27 at 4.) As relief, Dye seeks "compensation for discrimination, mental anguish, [] vindictive malice, [and] unfair treatment toward[ him]." (Compl. at 3.)

The defendants filed a motion to dismiss, arguing that Dye's allegations do not state viable due process or living-conditions claims. The defendants' motion does not address Dye's allegations concerning denial of equal protection or access to the courts or his attorneys.

In response to the defendants' motion, Dye adds that his transfer to Haysi "hindered and caused a[n] issue in properly taking care of [his] legal issues"; that his disciplinary conviction resulted in a penalty of seven days of lost privileges; that Major Alsbrook, Mullins, and Sgt. Kulcher "intentionally transferred [him] and seg[rega]ted [him] from legal counsel as a form of punishment and to hinder [his] right to a proper appeal"; that other inmates only had to be charge-free for 30 days to be eligible for a trustee job while he was told he had to be charge-free for 180 days; that he was transferred between Haysi and Tazewell at least 10 times "for court" and "not given the proper time to prepare [his] defense due to the transfer[s]"; and that the transfers caused "distress in [his] criminal case." (ECF No. 33 at 3, 6, 7, 8, & 10.)

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Pretrial detainees have due process protection for conduct that amounts to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). But "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537, 539 n.21 (defining "punishment" in terms of intent but noting that there is "a *de minimis* level of imposition with which the Constitution is not concerned") (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)); *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). "The relevant precedent teaches that 'punishment, whether for a convicted inmate or a pretrial detainee, is the product of intentional action, or intentional inaction, respecting known and *substantial* risks of harm.'" *Riddick v. Willet*, No. 3:15CV361, 2016 U.S. Dist. LEXIS 75963, 2016 WL 3282213, at *4 (E.D. Va. June 10, 2016) (emphasis in original) (quoting *Westmoreland v. Brown*, 883 F. Supp. 67, 72 (E.D. Va. 1995)). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount

to 'punishment.'" *Bell*, 441 U.S. at 539. When conduct does amount to punishment, some process is required and must include notice of the charges 24 hours before a hearing, an opportunity to present documentary evidence and call witnesses, and a written statement from the factfinder as to the evidence relied upon and the reason for the disciplinary action taken. *Wolff v. McDonnell*, 418 U.S. 539, 563−67 (1974); *see also Surprenant v. Rivas*, 424 F.3d 5, 18 (1st Cir. 2005) ("*Wolff* has long established the level of due process required before a pretrial detainee can be deprived of a liberty interest in a disciplinary hearing . . . .").

In the pretrial-detainee context, a due process inquiry requires examination of two distinct questions: whether the action implicates a liberty interest, thus triggering procedural due process requirements; and if so, whether the procedures afforded the detainee satisfied due process requirements. *Dilworth v. Adams*, 841 F.3d 246, 250-51 (4th Cir. 2016). In response to the defendants' motion to dismiss, Dye states that he "was given 7-day loss of privileges" as a penalty for the disciplinary conviction. (ECF No. 33 at 6.) While Dye does not specifically identify which privileges he lost, other courts have held that that the short-term deprivations of privileges are "so *de minimis* that they do not demand due process protection under *Bell v. Wolfish*." *Corral v. Bouldin*, 2019 U.S. Dist. LEXIS 196055, at *3−5 (E.D. Ca. Nov. 12, 2019) (holding that the short-term deprivations—7 to 30 days—of family visits and commissary privileges are "so *de minimis* that they do not demand due process protection pursuant to *Bell v. Wolfish*"); *see also Robles v. Prince George's Cty., Md.*, 302 F.3d 262, 269 (4th Cir. 2002) (a pretrial detainee must show that official action was not *de minimis* to invoke due process protections); *Gowen v. Enochs*, No. 7:20cv247, , 2021 WL 960702, 2021 U.S. Dist. LEXIS 47330, at *17 n.10 (W.D. Va. Mar. 15, 2021) (holding that the loss of recreation privileges for "a little over a

week" was a "minor deprivation" for "such a limited amount of time" and did not constitute punishment); *Peyton v. Cty. of Ventura*, No. CV 17-3202 VAP (AJW), 2017 U.S. Dist. LEXIS 214207, at *6, 2017 WL 6816355, at *3 (C.D. Cal. Aug. 22, 2017) (holding that short-term, temporary losses of commissary and visitation privileges—7 to 28 days—are "so '*de minimis*' that they do not amount to punishment under *Bell*, regardless of why they were imposed"); *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 n. 7 (8th Cir. 2006) (depriving a civil detainee of privileges such as canteen access and computer access does not implicate the Constitution); *Wright v. Gutierrez*, No. CV 11-443-PSG (SH), 2012 U.S. Dist. LEXIS 62447, 2012 WL 1570619, at *9 (C.D. Cal. Apr. 3, 2012) (dismissing a pretrial detainee's procedural due process claims because the plaintiff did not have a protected liberty interest "in the temporary, *de minimis* loss of canteen and other privileges (making phone calls, attending various merit program rehabilitative classes, exercising, etc.) that do not constitute constitutional violations"). The court concludes that Dye's seven days of lost privileges was similarly *de minimis* and, thus, did not implicate any due process right.

But even if a due process right was impacted, Dye's allegations establish that he was afforded all of the process that the Constitution requires: notice of the charges, an opportunity to present evidence, and a written statement of the findings. Instead, Dye complains that his disciplinary hearing was not conducted within seven days (per SWVRJA policy) and that he was denied the opportunity to appeal his conviction, but the constitution does not require a disciplinary hearing be held in seven days or that an inmate have the opportunity to appeal his

disciplinary conviction.[6] *See Kokoski v. Small*, No. 5:07cv0145, 2008 U.S. Dist. LEXIS 125319, at *46 (S.D. W. Va. July 1, 2008) ("[T]he only time requirement under *Wolff* is that the inmate receive written notice of the charge within 24 hours of a disciplinary hearing. There are no other time requirements necessary to comport with federal due process."); *Westbrook v. Koch*, No. 1:16cv480 (LMB/IDD), 2017 U.S. Dist. LEXIS 91964, at *16, 2017 WL 2589963, at *6 (E.D. Va. June 13, 2017) ("[I]t is widely recognized that an inmate has no right to appeal a disciplinary board's decision."); *Platt v. Brockenborough*, 476 F. Supp. 467, 469−70 (E.D. Pa. 2007) ("[P]risoners have no constitutional right to appeal the results of a disciplinary proceeding."); *Chance v. Compton*, 873 F. Supp. 82, 86 (W.D. Tenn. 1994) ("[A] right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff*."); *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) (administrative review of disciplinary hearing not constitutionally required).

To the extent Dye alleges that his transfer after his disciplinary conviction was punishment and, thus, violates his due process rights, his claim also fails. "[T]he due process clause is not implicated when a pre-trial detainee is transferred from one facility to another." *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 447 (S.D.N.Y. 2004) (quoting *Covino v. Vt. Dep't of Corrs.*, 933 F.2d 128, 129 (2d Cir. 1991)). In fact, "[p]rison officials retain broad discretion to transfer pretrial detainees." *Id.* Moreover, a plaintiff has no constitutional right to visitation, regardless of the facility in which he is incarcerated. *Hoye v. Lt. Gilmore*, No.

---

[6] To the extent Dye complains that the defendants violated SWVRJA or facility policies, his allegations do not state a viable § 1983 claim. Violations of internal procedural regulations or even state law by prison officials do not provide a basis for a constitutional claim under § 1983 unless the Constitution independently protects the right or procedure at issue. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 392 (4th Cir. 1990); *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) ("[P]rison officials' failure to follow internal prison policies [is] not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation.").

7:15cv3203, 2016 U.S. Dist. LEXIS 80880, at *7, 2016 WL 3512275, at *2 (W.D. Va. June 20, 2016) (quoting *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977), aff'd, 588 F.2d 913 (4th Cir. 1978) ("[T]here is no constitutional right to prison visitation, either for prisoners or visitors").

Finally, to the extent Dye alleges that by denying him a trustee job, the defendants violated his due process rights, his claim again fails because he has no constitutional right to trustee job. *Cuffee-Smith v. Shipley*, 65 F. App'x 912, 913 (4th Cir. 2003) (affirming the district court's dismissal of the plaintiff's complaint because it "correctly found that [the plaintiff] has no constitutional right to inmate trustee status") (citation omitted).

In sum, the court concludes that Dye's allegation fails to state a due process violation related to his disciplinary hearing, conviction, or penalty, or his transfer to Haysi, his distance from his family or friends, or the denial of his trustee job.

## IV.

The defendants construe Dye's complaint as alleging a claim concerning Dye's conditions of confinement. To establish a constitutional claim based upon his conditions of confinement, a plaintiff must prove that he was deprived a "basic human need" and that this deprivation was attended by deliberate indifference on the part of the defendants. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993); *see also Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Dye does not describe any conditions of his confinement, let alone conditions that deprived him of a basic human need. As such, the court cannot find that Dye has stated a viable living-conditions claim.

## V.

Defendants' motion to dismiss does not address any of Dye's potential equal protection or access-to-courts claims. Therefore, any such claims remain pending in this action. Consistent with this court's Standing Order 2023-17, the court will give the defendants the opportunity to file any motion for summary judgment within 60 days of the entry of this memorandum opinion and order. The court makes no finding as to the viability of any equal protection or access-to-courts claim at this time.[7]

## VI.

For the reasons discussed, the court will grant the defendants' motion to dismiss Dye's due process claims and any living conditions claim that could be construed from his complaint as amended. The court will also give the defendants the opportunity to respond to Dye's possible equal protection and living conditions claims.

The Clerk shall send copies of the Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 20th day of March, 2024.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[7] Dye filed a motion to "subpoena all the communications between [him] and the defendants," including "all messages and request[s] sent and received by [him] through the smart communication," "all request f[orms], security, programs, and grievances from May 2022 to May 2023 from both the Haysi and Tazewell" facilities, and "copies of both the initial write up from 4-14-2022 and the hearing from 4-22-22." (ECF No. 34.) Because several of his claims have now been dismissed, the court will deny Dye's motion without prejudice to his opportunity to refile the motion to the extent any of the proposed discovery is relevant to the remaining claims and proportional to the needs in this case, given its current posture.